UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

Ralph Nolan,

                        Plaintiff,

        -against-

The City of New York, Detective Ellis DeLoren, John
Doe New York City Police Officers #1-15 individually
and in their official capacity as Members of the New
York City Police Department,

                        Defendants.

———————————————————————X

**Docket No.: 23-cv-3147**

**COMPLAINT**

**JURY TRIAL
DEMANDED**

        Plaintiff, Ralph Nolan ("plaintiff" or "Nolan") by his attorneys, Edelman & Edelman,

P.C., complaining of the defendants The City of New York, ("City") individually and for the

New York City Police Department ("NYPD"), Detective Ellis DeLoren ("DeLoren"), John Doe

New York City Police Officers #1-15, individually and in their official capacity as Members of

the New York City Police Department, alleges as follows, upon information and belief:

## I. Introduction

        1.        This is a civil action against the Defendants based on the wrongful acts and

omissions of the City, the NYPD, DeLoren, and certain employees and agents of these entities

named herein, in which the Plaintiff Ralph Nolan (hereinafter "Mr. Nolan", or "Plaintiff") seeks

relief for the violation of his rights secured by 42 U.S.C. § 1983, of his rights secured by the

Fourth and Fourteenth Amendments to the United States Constitution, and his rights secured

under the provisions of the Constitution of the State of New York, including the violation of his

due process rights under the New York State Constitution Article I § 6.

        2.        Plaintiff seeks monetary damages for his due process violations, denial of a fair

trial, malicious prosecution, wrongful conviction, and approximate 6-year imprisonment caused

by the pervasive misconduct of the Defendants.

3.      This lawsuit also seeks to hold the defendant City of New York, and other defendants, liable for their misconduct under the federal civil rights statute 42 U.S.C. § 1983, and *Monell v. Dept. Of Social Services,* 436 U.S. 685 (1978). The unlawful actions of police detectives, including Detective Ellis DeLoren, as documented in this lawsuit, resulted from affirmative or de facto municipal policies, practices, and customs to violate the constitutional rights of criminal suspects and defendants, or from deliberate indifference by policy-making officials, acting on behalf of the City of New York, to such vilolations. As Plaintiff will demonstrate, Defendants and the NYPD, as a matter of policy, coerced witnesses to give false and unreliable testimony through unduly suggestive identification procedures. In rare cases where such misconduct was exposed, the Defendants and the NYPD took no disciplinary action against the offending employees, but instead praised and promoted them,  thereby encouraging future consitutional violations to occur, including those directed against Plainitff.

4.      Plaintiff Mr. Nolan was wrongfully imprisoned for a period of approximately 6 years for a crime he did not commit.

5.      On April 10, 2015, the jury, relying on fraudulently obtained eyewitness identifications, convicted the Plaintiff, Ralph Nolan of Conspiracy to Commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One), Attempted Hobbs Act Robbery in violation of 18 U.S.C. § 1951 (Count Two), and Brandishing a Firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three).

6.      Plaintiff Ralph Nolan was sentenced to 10 years in prison, followed by 3 years of supervised release (36 months on Counts 1 and 2 to run concurrently; followed by 84 consecutive months).

7.      Mr. Nolan commenced service of his sentence immediately.

8.      Mr. Nolan's conviction was procured by duress, misrepresentation, and fraud by

the Defendants, and upon material evidence submitted at trial which was known to be false by the Defendants.

9.      The acts and omissions leading to Mr. Nolan's unjust conviction occurred primarily in Bronx County, State of New York.

10.     Throughout the entire ordeal, Mr. Nolan maintained his innocence.

11.     The only direct evidence that connected Plaintiff Mr. Nolan to this crime were the highly suspect identifications of four witnesses, each of whom testified under a grant of immunity, had every reason to curry favor with the police, and whose identifications were conducted under suggestive procedures by NYPD Detective DeLoren, who was well aware that he was acting in violation of Mr. Nolan's rights.

12.     The jury, primarily relying on the false identifications of the four witnesses that identified Mr. Nolan as the perpetrator of the crime, found Mr. Nolan guilty on April 10, 2015.

13.     Mr. Nolan appealed his conviction to the Second U.S. Circuit Court of Appeals.

14.     On April 15, 2020, a three-judge panel of that court reversed and vacated Mr. Nolan's conviction, the Court specifically cited the improper eyewitness identifications obtained by the NYPD and Officer DeLoren as an egregiously obtained witness identification. See *United States v. Nolan,* 2nd Cir. (N.Y.), April 15, 2020.

> "Finally, and ***perhaps most egregiously,*** the police employed highly irregular procedures in ***pursuing the witnesses' identification of Nolan***, potentially biasing the victims' identifications by, for example, allowing them to talk among themselves about Nolan's identification and ***allowing them to view his photos on Facebook.*** Studies have demonstrated that the memories of eyewitnesses are extremely susceptible to contamination by external information, a common source of which is "cowitness interaction." See <u>Lawson,</u> 291 P.3d at 12 710 (citing Elin M. Skagerberg, <u>Co-Witness Feedback in Line-Ups,</u> 21 Applied 13 Cognitive

Psychol. 489 (2007)). (emphasis added).

15.     After the Second Circuit decision, Mr. Nolan's case was remanded to the lower court for further proceedings and a retrial before the trial Judge, The Honorable George B. Daniels, U.S. District Court for the Southern District of New York

16.     On March 22, 2021, the U.S. Attorney's Office for the Southern District of New York, moved to dismiss the case and filed a *Nolle Prosequi* with the trial court, stating "Based on a review of the evidence in the case and in light of the decision of the Court of Appeals, the Government has concluded that further prosecution of RALPH NOLAN, the defendant, would not be in the interests of justice". Document No. 160, filed March 22, 2021, case 14 -cr-00555.

17.     Judge Daniels ordered Mr. Nolan's case dismissed on March 23, 2021,  by granting and so ordering the *Nolle Prosequi.*

18.      The Plaintiff, Ralph Nolan seeks both compensatory and punitive damages, injunctive and declaratory relief, and an award of costs and attorney's fees, and such other and further relief as this court deems just and proper for being deprived of his life and liberty, spending six (6) years in prison for a crime that he did not commit, caused by the pervasive misconduct of the defendants.

## II. Background

19.     Mr. Nolan was found guilty by a jury on April 10, 2015, and was sentenced to ten (10) years in prison. His indictment charged that on December 16, 2013, he and an accomplice committed an armed home invasion robbery of an apartment in the Bronx. The apartment in question contained a variety of valuables as well as illegal drugs.

20.     The two robbers were described by the eyewitness family members present at the apartment in question as being Hispanic.

21.     911 calls made shortly after the incident by the eyewitnesses describe two

Hispanic males as the perpetrators.

22.     An eyewitness home health aide of one of the family members further recalled that the perpetrators yelled at them to get down on the ground in Spanish, and that they were not speaking English.

23.     Plaintiff, Mr. Nolan is white and speaks only English.

24.     The eyewitness identifications of Plaintiff, Mr. Nolan, were false, coerced, and based on suggestive police practices.

25.     There was no physical or forensic evidence tying Mr. Nolan to the crimes in question.

26.     In addition, the eyewitness who testified against Mr. Nolan received a grant of immunity for their testimony, as later investigation revealed this was a drug related robbery.

27.     The Defendants Detective DeLoren, the City of New York, and its agency The New York City Police Department:

      a.   investigated, arrested, prosecuted, and procured a conviction of Mr. Nolan knowing at all times there was no probable cause to do so;

      b.   intentionally relied on patently false witness claims, using them to incriminate Mr. Nolan;

      c.   failed to investigate self-contradictory witness claims;

      d.   coerced, intimidated or pressured witnesses to testify against Mr. Nolan;

      e.   knowingly induced witnesses to testify falsely against Mr. Nolan;

      f.   knowingly and intentionally employed highly irregular, unlawful, and unduly suggestive identification procedures to induce witnesses to falsely identify Mr. Nolan as a perpetrator and accomplice in the commission of the armed home invasion which is the subject matter of the indictment in this case;

      g.   orchestrated interaction and coordination between key witnesses in the case to ensure that their stories and false identifications of Mr. Nolan appeared to be consistent and believable to the judge and jury in the case;

      h.   withheld and wrongfully denied the existence of *Brady* material;

i.   withheld and wrongfully denied evidence that supported Mr. Nolan's alibi
defense;

j.   withheld impeachment material;

k.   wrongfully presented false evidence against Mr. Nolan;

l.   continued to investigate, arrest and prosecute Mr. Nolan knowing that the
witness's testimony against him was false; and

m.  the product of coercion.

28.    The unlawful, documented actions of Defendants', as well as their employees and agents resulted from affirmative or *de facto* or municipal policies, practices, and customs which violate the constitutional rights of criminal suspects and Defendant, or from deliberate indifference by policymaking officials, acting on behalf of the City of New York, to such violations.

29.    Upon information and belief, it was a matter of practice and policy within the NYPD to promote this type of unlawful and unconstitutional behavior, praising and promoting such individuals, and thereby encouraging future constitutional violations to occur, including those directed against Mr. Nolan.

30.    Having become aware of such improper behavior, the Defendants also exhibited a deliberate indifference to these illegal actions, which had the effect of encouraging their employees to continue to violate the constitutional rights of Defendants in criminal cases, including the Plaintiff's case.

31.    Upon information and belief, the Defendants failed to disclose *Brady*, impeachment, and Confrontation Clause material, and related history of the key witnesses.

32.    Not only did Defendants and their agents cause through their own misconduct the unconstitutional imprisonment of this innocent plaintiff, but they also failed to entertain, consider and investigate more credible leads to find the actual perpetrators, who upon information and belief remains free to this day.

33.     This pattern of misconduct, acts of commission and omission, recklessness and negligence as well as willful deprivation of *Brady* material from Mr. Nolan by those sworn to uphold the law, is reflective of a systematic deprivation of New York State Constitutional rights as well as common law and statutory rights of Mr. Nolan and other accused innocents by the Defendants.

### III. Jurisdiction & Venue

34.     This is a civil action for malicious prosecution and the deprivation of plaintiff's right to a fair trial, against the Defendants based on and arising out of the wrongful acts and omissions of the NYPD and certain employees and agents of the City of New York, in which the Plaintiff seeks relief for the violation of his rights secured by the common law and Constitution of the State of New York and the Constitution of the United States.

35.     This action seeks monetary damages and attorney's fees for the plaintiff due to his wrongful arrest, prosecution, conviction, and approximate six years of imprisonment caused by the pervasive misconduct of the Defendants, including the City of New York acting by and through the NYPD.

36.     The City of New York, and the NYPD are liable to the Plaintiff directly and under the theory of *respondeat superior* for the acts of their employees, borrowed servants and authorized representatives.

37.     Under the doctrine of *respondeat superior,* the City of New York is liable for their agents' state law torts of malicious prosecution, intentional, reckless, and negligent infliction of emotional distress, and negligence.

38.     The named individuals in the caption are sued in both their individual and official capacities.

39.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343(3) and (4), which

provides for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. § 1983, and by 28 U.S.C. § 1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.

40.    Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

41.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

42.    Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## IV. Parties

### A. Plaintiff

43.    Plaintiff Ralph Nolan ("Mr. Nolan") was at all times material to this complaint a citizen and resident of the State of New York.

44.    Mr. Nolan was wrongfully convicted of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One), attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Two), and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three) by a jury in the Southern District of New York on April 10, 2015.

45.    Mr. Nolan's case was dismissed on March 23, 2021, by The Honorable George B. Daniels, U.S. District Court for the Southern District of New York.

46.    Mr. Nolan wrongfully served approximately six (6) years incarcerated for crimes he did not commit.

### B. Defendant City of New York

47.     Defendant City of New York was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.

48.     Defendant City of New York is a political subdivision of the State of New York existing by virtue of the laws of the State of New York and is considered a person amenable to suit.

49.     Defendant City of New York operates the New York City Police Department, and as such is the public employer of the Defendant officers herein.

50.     Defendant City of New York was, at all times relevant herein, authorized by law to maintain, and did maintain, a police department known as the New York City Police Department ("NYPD") which acted as its agent in the area of law enforcement, including, without limitation, conducting investigations of and evaluating and causing charges to be brought about alleged crimes.

51.     The NYPD was, at all times relevant herein, a municipal agency of the City of New York and was charged with the responsibility of enhancing the quality of life by working in accordance with constitutional rights to enforce the law.

52.     Defendants former or current NYPD officers or detectives were, at all times relevant herein, officers, employees, and agents of the NYPD.

53.     These parties are sued individually and in their official capacities.

          (i) Individual Defendant: Detective DeLoren

54.     The Defendant Detective Ellis DeLoren ("DeLoren") at all times relevant to this complaint was a duly-appointed and acting police officer of the NYPD, an agency of the Defendant City of New York, with the rank of detective, acting under color of law and in his individual capacity within the scope of employment, pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York.

55.    Defendant Detective DeLoren was a NYPD police officer, and at all times relevant hereto, acted in that capacity as an agent, servant, and/or employee of Defendant New York City and within the scope of their employment. Detective DeLoren is sued in his official and individual capacity.

56.    At all relevant times hereto, Defendants were acting under the color of state and local law. Defendants are sued in their individual and offical capacities. At all relevant times hereto, Defendant City of New York was responsible for making and enforcing the policies of NYPD and was acting under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or the City of New York.

(ii) John Doe Defendants

57.    Defendants John Doe New York City Police Officers #1 -15, whose actual names the Plaintiff has been unable to ascertain despite reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe," represent those officers and detectives in the acting under color of law and in their individual capacities within the scope of employment, pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York, who participated  in the investigation and unlawful conduct that led to Nolan's wrongful conviction.

58.    Defendants John Doe New York City Police Officers #1 -15, were NYPD police officers, and at all relevant times hereto, acted in that capacity as agents, servants, and/or employees of Defendant New York City and within the scope of their employment. John Doe New York City Police Officers #1 -15, are sued in their nofficial and individual capacity.

59.    At all relevant times hereto, Defendants were acting under the color of state and local law. Defendants are sued in their individual and offical capacities. At all relevant times hereto, Defendant City of New York was responsible for making and enforcing the policies of

NYPD and was acting under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or the City of New York.

## V.  Facts

### A. The Robbery the Plaintiff Didn't Commit

60.      On the afternoon of December 16, 2013, two robbers stormed into an apartment on Webster Avenue in the Bronx, New York. Six people were inside: Lorraine Scroggins; her daughter, Desiree Scroggins; Christopher Martinez, Desiree Scroggins's boyfriend; his mother, Sandra Martinez; an infant girl who was the daughter of Christopher Martinez and Desiree Scroggins; and Dayanira Beriguette, a home-health aide for Lorraine Scroggins, a quadriplegic.

61.      The robbers wore face masks which covered most, but not all of their faces, displayed guns, yelled at the victims in Spanish, and tied up the adults while they searched the apartment and stole electronics and jewelry.

62.      Desiree Scroggins claimed to have been pistol-whipped during the robbery but did not seek treatment.

### B. The Police Investigation

63.      The 911 call made after the robbers fled described the assailants as two Hispanic males.

64.       The eyewitness Dayanira Beriguette, a home-health aide, recalled that the perpetrators yelled at them to get down on the ground in Spanish, and that they were not speaking English.

65.      In the immediate aftermath of the crime, several of the victims indicated that the robbers were Hispanic and none identified Nolan (who is white and who was known to two of the victims) as one of the robbers.

66.      Police interviewed the five adults, who confirmed that description. Sandra
Martinez later told police that one of the robbers referred to her as "Mimi," a family nickname.

67.      Defendant Detective Ellis DeLoren ("DeLoren") of the New York Police
Department led the investigation.

68.      Surveillance video from the elevator had captured the faces of three men believed
to be the robbers and a lookout as they made their way up to the apartment, none of which was
Plaintiff, Mr. Nolan.

69.      One of the men identified in the elevator surveillance video was Shaun Odiot, a
Hispanic male, and Sandra Martinez's brother.

70.      Evidence at trial also established that Shaun Odiot had canvassed the apartment
earlier that day.

71.      Desiree Scroggins heard in the neighborhood that Mr. Odiot had been seen by
neighbors selling items taken in the robbery.

72.      Desiree Scroggins called Defendant Detective DeLoren on January 21, 2014 to
report what she had learned and also made a startling admission: the robbers had also stolen
marijuana from the apartment suggesting that this most likely was a drug-related robbery.

73.      Detective DeLoren interviewed Sandra Martinez two days later. Ms. Martinez
made no mention of Mr. Odiot and continued to describe the robbers as Hispanic males, one
about five foot five and the other six feet tall. The smaller man, she said, was thin, with a black
leather jacket. The taller one was heavier, wearing a green jacket.

### C. The Deliberately Suggestive Photo Arrays

74.      Using the identification of Mr. Odiot as a starting point, Detective DeLoren
assembled 22 mugshots of men with arrest records and connections to Mr. Odiot's apartment
address. Among the men included in the search of connections to Mr. Odiot's address was 25-
year-old Ralph Nolan, the Plaintiff in this matter.

75.     Detective DeLoren returned to the apartment of the eyewitnesses on January 27, 2014 with photos of 22 mugshots of men. The eyewitness Desiree Scroggins looked at the photographs and conceded uncertainty regarding the identity of the robbers.

76.     Defendant Detective Deloren then went to show eyewitness Lorraine Scroggins the photographs. Ms. Scroggins said that Nolan was possibly one of the robbers, but she was not sure.

77.     Detective DeLoren then pulled up Plaintiff Mr. Nolan's Facebook profile and showed Ms. Scroggins more photographs, including a photograph of Plaintiff Mr. Nolan holding what looked like a gun. This photograph however depicted a BB gun. In fact, the Facebook photograph depicted a BB gun that did not even belong to Mr. Nolan.

78.     The gun belonged to Plaintiff's cousin, Joseph Nolan,  who confirmed that the gun was actually a BB gun, was purchased off of Amazon, and that the photograph was taken when he and Ralph Nolan were playing around.

79.     Only after being shown this extraordinarily suggestive photograph of Mr. Nolan holding what appeared to be a gun, and only after Defendant Detective DeLoren had engaged in and permitted co-witness interaction, did eyewitness Lorraine Scroggins suddenly identify Mr. Nolan as one of the perpetrators of the crime. At that point, Desiree Scroggins entered the room, and her mother, referencing Mr. Nolan's BB gun photo, asked, "That's him, right?"

80.     After Detective DeLoren left, the eyewitness Lorraine Scroggins shared what she had seen on Facebook with the other critical eyewitnesses, Christopher and Sandra Martinez.

81.     Eyewitness Sandra Martinez falsely identified Mr. Nolan on January 28, 2014.

82.     Eyewitness Christopher Martinez falsely identified Mr. Nolan on February 10, 2014.

83.     These photo arrays were improperly suggestive because the picture of the accused included a weapon, what appeared to be a real gun, it stood out from all of the other

photographs as to suggest to an identifying witness that the Plaintiff was more likely to be the culprit, and one of the unknown robbers.

84.     It is important to note that Christopher Martinez also knew plaintiff Mr. Nolan from years earlier, calling him by the nickname "White Boy," because Mr. Nolan was a member of one of the few white families in the predominantly Black and Hispanic community. Mr. Martinez initially said he did not think "White Boy" would be involved in any robbery, however, at the suggestion of Defense Detective DeLoren to name him as the perpetrator, he went along with the wrongful identification of plaintiff.

### D. State Authorities Pass False Identification of Mr. Nolan to Federal Law Enforcement

85.     Because the case involved the robbery of purported drug dealers involved with illicit interstate commerce, federal authorities (relying on the false, fraudulent, suggestive, and unconstitutional procedures used by NYPD detectives and defendant Detective DeLoren to implicate the Plaintiff, Mr. Nolan) decided to assert federal jurisdiction over the case.

86.     Mr. Nolan was indicted by a federal grand jury on three counts: conspiracy to commit armed robbery, attempted armed robbery, and the use of a weapon in committing an attempted armed robbery.

87.     Mr. Nolan was arrested on on July 28, 2014.

88.     Mr. Nolan was interviewed shortly after his arrest. In the interview, he said the gun in the Facebook photo – which was taken by his cousin – was just a BB gun. Defendants and the NYPD also referenced his previous arrests, including a juvenile adjudication for armed robbery when he was fifteen (15) that involved Nolan and two other boys taking lunch money from three boys by threatening to beat them up with their fists. In addition, defendants and the NYPD asked Mr. Nolan to provide information about Mr. Odiot's involvement with the robbery.

89.     Mr. Nolan said he could not provide information about Mr. Odiot's involvement

with the robbery.

90.     Mr. Nolan acknowledged knowing Mr. Odiot from the neighborhood and said that

Mr. Odiot had given Nolan a cellphone as a gift about nine years earlier.

91.     However, Mr. Nolan did not know anything about the 2013 robbery and has

steadfastly maintained his innocence.

### E. Government Heads to Trial with False Witnesses

92.     Before Mr. Nolan's case went to trial in U.S. District Court for the Southern

District of New York, the eyewitnesses Scrogginses and the Martinezes were granted immunity

for any testimony they gave related to the illegal sale of drugs at the apartment. Obviously, this

was necessary as it now has been determined that this crime was in all probablility a robbery and

shakedown of a drug-dealing operation located in the Webster avenue apartment complex.

93.     In addition, a year after the robbery, the government learned that Mr. Odiot had

been at the subject apartment the day of the robbery, and had asked about Lorraine Scroggins's

drug dealing at Thanksgiving the month before the robbery.

94.     Plaintiff, Mr. Nolan was wrongfully prosecuted and convicted for this crime.

95.     In addition, Mr. Nolan had an alibi that his defense lawyer at the time of trial

failed to properly serve notice of prior to trial. Mr. Nolan was working with his father, installing

cable wiring on the morning of the robbery.

96.     The defendants had indicted and maliciously prosecuted the wrong individual,

Mr. Nolan, for this crime, and continued to maintain that malicious prosecution after learning of

additional information that defeated probable cause with respect to the Plaintiff.

97.     Nolan's trial began on April 7, 2015. The government presented Mr. Odiot as an

unindicted co-conspirator. Eyewitnesses Desiree and Loraine Scroggins, and Sandra and

Christopher Martinez each testified that Mr. Nolan was one of the two men who robbed them at

gunpoint.

Case 1:23-cv-03147-JHR   Document 1   Filed 04/14/23   Page 16 of 40

Nolan v. City of New York, et al.                                    Plaintiff's Verified Complaint

98.     Beriguette, the home-health aide, also testified and was the only eyewitness who did not identify Mr. Nolan.

99.     Beyond the eyewitness identification, there was no physical or forensic evidence tying Mr. Nolan to the crime.

100.    On September 28, 2016, the Court sentenced Nolan to 10 years in prison, followed by three years of supervised release.

101.    The only evidence that connected Ralph Nolan to this crime was the highly suspect identifications of four witnesses, each of whom testified under a grant of immunity, had every reason to curry favor with the police, and whose identifications were conducted under the highly suggestive procedures by the defendants, NYPD, and Detective DeLoren.

### F. The Second Circuit Exonerates Plaintiff

102.    Mr. Nolan then appealed to the Second U.S. Circuit Court of Appeals. On April 15, 2020, a three-judge panel reversed Daniels and vacated Nolan's conviction.

103.    On March 22, 2021, the U.S. Attorney's Office moved to dismiss the case. It said in part: "Based on a review of the evidence in the case and in light of the decision of the Court of Appeals, the Government has concluded that further prosecution of Ralph Nolan, the defendant, would not be in the interests of justice."

104.    Honorable Judge Daniels ordered Mr. Nolan's case dismissed on March 23, 2021.

105.    Throughout the entire ordeal, Mr. Nolan maintained his innocence.

## VI. Absence of Probable Cause Established Early in Investigation

106.    Upon information and belief, long before Mr. Nolan was arrested, indicted, or convicted, defendants knew no probable cause existed to support the arrest, prosecution, and conviction of Mr. Nolan.

107.    After Mr. Nolan was arrested and arraigned, without probable cause, defendants

Case 1:23-cv-03147-JHR   Document 1   Filed 04/14/23   Page 17 of 40

Nolan v. City of New York, et al.                                   Plaintiff's Verified Complaint

learned of additional information that further eroded any legitimate claim of probable cause against Mr. Nolan.

108.    By the time Mr. Nolan went to trial, defendants knew there was no probable cause against Mr. Nolan.

109.    Defendants knew or should have known that eyewitness statements identifying him were false.

110.    Instead of disregarding or verifying the witnesses story, upon information and belief, New York City police officers and detectives set about to coerce the eye-witnesses, including threats to use evidence and testimony to implicate their involvement in the narcotics trade.

111.    The false testimony of the eyewitnesses, acting under the threat of prosecution and imprisonment were a key factors in obtaining the conviction of Mr. Nolan.

**COUNT I**
**Malicious Prosecution**
**Pursuant to 42 U.S.C. § 1983**
**(4th and 14th Amendments)**

***Plaintiff vs. All Defendants***

112.    Plaintiff hereby incorporates all other paragraphs as if fully set forth herein at length.

113.    Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, regarding Malicious Prosecution.

114.    Plaintiff brings this cause of action for Malicious Prosecution against defendants acting under color of state law to recover money damages for deprivations of plaintiff's federal constitutional rights. Defendants violated plaintiff's rights secured by the Constitution and laws of the United States and the deprivation was committed by defendants and persons acting under

color of state law.

115.    Plaintiff's right to be free from malicious prosecution is a clearly established right, which the defendants violated.

116.    The Defendants, with malicious intent, arrested plaintiff and initiated a criminal proceeding despite knowing that plaintiff had committed no crime.

117.    That all charges against plaintiff were terminated in his favor.

118.    That all charges against plaintiff terminated without his conviction, pursuant to *Thompson v. Clark,* 142 S. Ct. 1332 (2022).

119.    That there was no probable cause for the arrest and criminal proceedings.

120.    The Defendants, with malice and knowing that probable casue did not exist to arrest plaintiff and prosecute him for said crimes, acted individually and in concert, caused plaintiff to be arrested, charged and prosecuted for said crimes, thereby violating his clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, to be free of unreasonable searches and seizures.

121.    Defendants, acting individually, and in concert fabricated evidence and intentionally withheld from and misrepresented to United States Attorneys, prosecutors, plaintiff, his trial counsel, the grand jury, and the trial court exculpatory facts that vitiated probable cause against plaintiff and would have impeached witnesses for the prosecutors (United States Attorneys) at trial, including the fact that the identification of plaintiff was the result of impermissible suggestion and/or coercion of the defendants, and that the police and Defendant DeLoren had fabricated inculpatory evidence and withheld exculpatory and impeachment evidence. The Defendants also failed to conduct a constitutionally adequate investigation in light of evidence pointing to other individuals and away from the plaintiff.

122.    That the Defendants performed the above-described acts and omissions under color of state law, intentionally, with reckless disregard for the truth, and with deliberate

indifference to plaintiff's clearly established constitutional rights.

123.    That by reason of the Defendants' acts and omissions, Defendants, acting under color of state law and within their scope of authority, in gross and wanton disregard of plaintiff's rights, deprived plaintiff of his liberty when they maliciously prosecuted him and subjected him to an unlawful, illegal, and excessive detention, and imprisonment, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constituion.

124.    That upon information and belief, Defendants had a policy and/or custom of maliciously prosecuting individuals despite lack of probable cause. Thus, as a result of the above described policies and customs, plaintiff was maliciously prosecuted despeite the fact that he had commited no violation of the law.

125.    That upon information and belief, this policy and/or custom was a practice that was so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware.

126.    That upon information and belief, it was the policy and/or custom of defendant City of New York to inadequatley hire, train, supervise, discipline and /or terminate their officers, staff, agents, and employees, thereby failling to adequatley discourage further constitutional violations on the part of their officers, staff, agents, and employees.

127.    That as a result of the above described policies and customs, defendant City of New York, its staff, agents, and employees knew or should of known that their actions would not be properly monitored by supervisory officers and that their misconduct would not be investigated or santcioned, but would be tolerated.

128.    That the above described policies and customs demonstrate a deliberate indifference on the part of the policy makers of Defendant City of New York to the constitutional rights of arrestees and were the cause of the violations of plaitniff's rights alleged herein.

129.    That in so acting, Defendant City of New York abused its power and authority as

policymaker of the NYPD under the color of State and/or local law.

## Malicious Prosecution

130.    Defendants' misconduct amounts to malicious prosecution, a tort that protects the

personal interest in freedom from unjustifiable prosecution in the absense of probable cause.

## Plaintiff Seized in Violation of 4th Amendment

131.    Defendants seized the plaintiff, including post-arraignment, under the pretext of

legal process.

132.    Defendants took the plaintiff into custody, imprisoned him, physically detained

him, and seized him in violation of his Fourth Amendment rights.

133.    Plaintiff's seizure amounted to a violation of the Fourth Amendment to the U.S.

Constitution.

134.    Plaintiff's post-arraignment deprivations of liberty constituted a seizure.

135.    Plaintiff's seizure constituted malicious prosecution under federal law.

## Defendants Commenced and Continued Proceedings Against Plaintiff

136.    The defendants commenced criminal and related proceedings against the Plaintiff.

137.    The defendants continued criminal and related proceedings against the Plaintiff.

138.    The defendants played an active role in the prosecution, giving advice and

encouragement and importuning authorities to act.

## No Probable Cause

139.    The defendants initiated the proceedings against the plaintiff without probable

cause to believe the proceeding could succeed.

140.    Lacking probable cause to arrest and prosecute Mr. Nolan, the defendants coerced

and induced eyewitnesses to falsely implicate Mr. Nolan in crimes he did not commit.

141.    The defendants used a photograph from Facebook depicting Mr. Nolan holding a BB gun to make an unduly suggestive witness identification and compounded this unconstitutionally suggestive identification by allowing these witnesses to speak with and poison the identification made by a co-witness.

142.    These defendants did not have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense was committed by Mr. Nolan.

143.    The facts available to the defendants at the time of the arrest, and before the arrest, did not establish probable cause.

144.    The evidence from the investigation did not support a finding of probable cause to believe that plaintiff committed the crimes with which he was charged.

145.    Defendants knew there was no probable cause to arrest, and no probable cause to prosecute the plaintiff.

146.    Defendants did not reasonably believe there was probable cause to arrest, or probable cause to prosecute the plaintiff.

147.    The defendants did not have knowledge of, or reasonably trustworthy information as to, facts and circumstances that were sufficient to warrant a person of reasonable caution in the belief that an offense was committed by the plaintiff.

148.    The defendants' proceedings against the plaintiff were begun with malice.

149.    Defendants' lack of probable cause alone creates an inference of malice.

**Defendants' Misconduct**

150.    The defendants commenced the criminal proceedings against the plaintiff due to a wrong or improper motive, and something other than a desire to see the ends of justice served.

151.    The plaintiff's indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith, which overcomes any presumption of probable cause created by the indictment.

152.    The defendants did not made a complete and full statement of facts to the grand jury.

153.    The defendants did not made a complete and full statement of accurate facts to the United States Government, federal law enforcement, and/or the United States Attorney's Office.

154.    The defendants misrepresented evidence against the plaintiff.

155.    The defendants falsified evidence against the plaintiff.

156.    The defendants withheld evidence.

157.    The defendants acted in bad faith.

158.    The defendants' false information and other misconduct was necessary to the findings of probable cause against the plaintiff.

159.    The defendants' severe misconduct vitiated any presumption of probable cause afforded by a grand jury indictment.

160.    The defendants' misconduct, including false and fabricated statements, were the proximate cause of plaintiff's prosecution.

### *Indictment was Improperly Obtained*

161.    Although Mr. Nolan was indicted, the indictment in this case failed to establish probable cause.

162.    The indictment against Mr. Nolan was produced by fraud and the fraudulent actions of the Defendants.

163.    The indictment against Mr. Nolan was produced by perjury.

164.    The indictment against Mr. Nolan was produced by the suppression of evidence.

165.    The indictment against Mr. Nolan was produced by other police conduct undertaken in bad faith.

### Defendants Ignored Inconvenient Facts; Accepted Unbelievable Ones

166.    Defendants improperly ignored facts in determining probable cause.

167.    In making a probable cause determination, defendants here disregarded plainly exculpatory evidence.

168.    Defendants may form their probable cause to arrest using information from an eyewitness, unless the circumstances raise doubt as to the person's veracity.

### Witnesses Lacked Fundamental Reliability and Veracity

169.    The reliability or veracity of the informant, and the basis for the witness's knowledge are two important factors. Caldarola v. Calabrese, 298 F. 3d 156, 162 [2d Cir. 2002].

170.    Upon information and belief, defendants knew well in advance that the eyewitness statements were unreliable.

171.    Defendants ignored non-trivial discrepancies and external evidence powerfully undermining the reliability of the witness's identification, which itself undercuts any probable cause.

172.    Defendants knew or had constructive knowledge that there was an entire lack of probable cause in the criminal proceedings commenced against Plaintiff.

173.    The facts and circumstances known to the Defendants when they commenced and continued these proceedings against Plaintiff would lead any reasonably prudent person in a similar situation to believe Plaintiff not guilty.

174.    That there was no probable cause is evidenced by the fact that this conviction did not survive appeal.

**Actual Malice**

175.    The Defendants commenced and continued the proceedings against Defendant with actual malice.

176.    The Defendants commenced and continued the criminal proceedings against Plaintiff with "conscious falsity"—that is, they were conscious of the falsity of the proceedings against Defendant.

177.    Defendants commenced the criminal proceedings for a wrong and improper motive, for something other than the desire to see the ends of justice served.

178.    There is circumstantial evidence of malice because Defendants must have known that there was no probable cause to prosecute Plaintiff.

**Matter Terminated in Plaintiff's Favor**

179.    The criminal and other proceedings terminated in favor of the Plaintiff.

180.    The outcome of the criminal proceedings against the Plaintiff are consistent with the innocence of the accused Plaintiff.

**Causation**

181.    Defendants' conduct actually caused Defendant to be wrongfully and maliciously accused, prosecuted, tried, convicted, and imprisoned.

182.    Defendants' conduct foreseeably caused Defendant to be wrongfully accused, prosecuted, tried convicted and imprisoned.

183.    Plaintiff suffered damages and injuries as a result of Defendants' malicious conduct as described herein.

184.    Plaintiff suffered special injuries as a result of Defendants' conduct.

185.    As a direct and foreseeable result of Defendants' conduct, Plaintiff suffered concrete harm, considerably more cumbersome than the physical, psychological or financial

demands of defending a prosecution.

186.    Defendants, their officers, agents, servants and employees were responsible for the malicious prosecution of Plaintiff.

187.    Defendant City of New York, as an employer of the Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

188.    As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein

**No Qualified Immunity**

189.    Defendants here do not enjoy qualified immunity because it was not objectively reasonable for them to believe that their actions did not violate plaintiff's clearly established right to be free from malicious prosecution.

190.    Defendants were plainly incompetent, or knowingly violated the law, in initiating and maintaining proceedings against the plaintiff, and violating his clearly established rights.

191.    Defendants' determinations were not objectively reasonable because there was no arguable probable cause at the time of the arrest or to initiate and maintain proceedings against the plaintiff.

192.    The defendants lacked probable cause to arrest the plaintiff, and even after his arrest learned other facts that continued to further errode any probable cause regarding the case.

193.    Police officers of reasonable competence could not disagree that the probable cause test was not met.

194.    Defendants' actions were not objectively reasonable in determining probable cause.

195.    Defendants' actions were made in bad faith.

196.    Defendants' actions were taken without a reasonable basis.

197.    Defendants' conduct went far beyond an exercise of their discretionary duties, as they ignored facts, fabricated findings, and coerced witnesses to give false testimony.

198.    Defendants' conduct went far beyond the exercise of reasoned judgment which could typically produce different acceptable results.

199.    By virtue of the foregoing, Defendants are liable for having  substantially caused the foregoing violations of Plaintiff's consitutional rights and his resultant injuries.

200.    Plaintiff is innocent of the said robbery and all underlying charges. The prosecution finally terminated in Plaintiff's favor on March 23, 2023, when the indictment was dismissed by Court order, signed by The U.S. District Court Judge, Hon. George B. Daniels.

201.    By virtue of the foregoing, Defendants are liable for having substantially caused the foregoing violations of Plaintiff's consitutional rights and his resultant injuries.

### COUNT II
### Malicious Prosecution
### under New York State Law

#### *Plaintiff vs. All Defendants*

202.     Plaintiff hereby incorporates all other paragraphs as if fully set forth herein at length.

203.    Plaintiff seeks relief for the violation of his rights secured under the laws and Constitution of the State of New York, regarding Malicious Prosecution.

204.    Plaintiff brings this cause of action for Malicious Prosecution against defendants acting under color of state law to recover money damages for deprivations of plaintiff's state constitutional rights. Defendants violated plaintiff's rights secured by the Constitution of the State of New York, and the deprivation was committed by defendants and persons acting under color of state law.

205.    Plaintiff's right to be free from malicious prosecution is a clearly established

right, which the defendants violated.

206.   Plaintiff's seizure constituted malicious prosecution under New York State Law .

207.   The Defendants, with malicious intent, arrested plaintiff and initiated a criminal proceeding despite knowing that plaintiff had committed no crime.

208.   That all charges against plaintiff were terminated in his favor.

209.   That all charges against plaintiff terminated without his conviction, pursuant to *Thompson v. Clark,* 142 S. Ct. 1332 (2022).

210.   That there was no probable cause for the arrest and criminal proceedings.

211.   The Defendants, with malice and knowing that probable casue did not exist to arrest plaintiff and prosecute him for said crimes, acted individually and in concert, caused plaintiff to be arrested, charged and prosecuted for said crimes, thereby violating his clearly established right, under the New York State Constitution, to be free of unreasonable searches and seizures.

212.   Defendants, acting individually, and in concert fabricated evidence and intentionally withheld from and misrepresented to United States Attorneys, prosecutors, plaintiff, his trial counsel, the grand jury, and the trial court exculpatory facts that vitiated probable cause against plaintiff and would have impeached witnesses for the prosecutors (United States Attorneys) at trial, including the fact that the identification of plaintiff was the result of impermissible suggestion and/or coercion of the defendants, and that the police and Defendant DeLoren had fabricated inculpatory evidence and withheld exculpatory and impeachment evidence. The Defendants also failed to conduct a constitutionally adequate investigation in light of evidence pointing to other individuals and away from the plaintiff.

213.   That the Defendants performed the above-described acts and omissions under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to plaintiff's clearly established constitutional rights.

214.    That by reason of the Defendants' acts and omissions, Defendants, acting under color of state law and within their scope of authority, in gross and wanton disregard of plaintiff's rights, deprived plaintiff of his liberty when they maliciously prosecuted him and subjected him to an unlawful, illegal, and excessive detention, and imprisonment, in violation of his rights pursuant to the Constitution of the State of New York.

215.     That upon information and belief, Defendants had a policy and/or custom of maliciously prosecuting individuals despite lack of probable cause. Thus, as a result of the above described policies and customs, plaintiff was maliciously prosecuted despeite the fact that he had commited no violation of the law.

216.    That upon information and belief, this policy and/or custom was a practice that was so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware.

217.    That upon information and belief, it was the policy and/or custom of defendant City of New York to inadequatley hire, train, supervise, discipline and /or terminate their officers, staff, agents, and employees, thereby failling to adequatley discourage further constitutional violations on the part of their officers, staff, agents, and employees.

218.    That as a result of the above described policies and customs, defendant City of New York, its staff, agents, and employees believed that their actions would not be properly monitored by supervisory officers and that their misconduct would not be investigated or santcioned, but would be tolerated.

219.    That the above described policies and customs demonstrate a deliberate indifference on the part of the policy makers of Defendant City of New York to the constitutional rights of arrestees and were the cause of the violations of plaitniff's rights alleged herein.

220.    That in so acting, Defendant City of New York abused its power and authority as policymaker of the NYPD under the color of State and/or local law.

**COUNT III**
**Denial of a Fair Trial**
**42 U.S.C. § 1983**
**(14th Amendment Deprivation of Liberty)**

*Plaintiff vs. All Defendants*

221.   Plaintiff hereby incorporates all other paragraphs as if fully set forth herein at length.

222.   Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, of his rights secured by the Fourteenth Amendments to the United States Constitution, regarding his due process rights to a fair trial.

223.   Plaintiff seeks relief under 42 U.S.C. § 1983 for his Fourteenth Amendment deprivation of liberty without due process of law and denial of a fair trial, by the defendants fabrication of evidence, and deliberate failure to conduct a constitutionally adequate investigation.

224.   Defendants, acting individually and in concert, deprived Plaintiff of his clearly established constitutional right under the Fourteenth Amendment of the United States Constition, to due process of law and a fair trial.

225.   Defendants were aware, or should have been aware of the falsity of the information used to prosecute plaintiff, which caused a deprivation of plaintiff's liberty through an unfair trial.

226.   Defendants fabricated inculpatory evidence and intentionally used unduly suggestive identification procedures and/or direct suggestion and/or coercion to obtain witness identifications, including but not limited to, fabricating the false identifications of plaintiff as the perpetrator of the crime, by using an unduley suggestive Facebook photograph of plaintiff yielding a weapon; the identifications of plaintiff were fabricated and the result of suggestion and coercion by the defendants; and the defendants failed to conduct a constitutionally adequate

Case 1:23-cv-03147-JHR   Document 1   Filed 04/14/23   Page 30 of 40

Nolan v. City of New York, et al.                                    Plaintiff's Verified Complaint

investigation in light of evidence pointing to other perpetrators and away from plaintiff.

227.    Defendants, intentionally using the fabricated evidence deprived plaitniff of his right to a fair trial, by intentionally using impermissible suggestions and coercion to obtain witness identifications and to suppress exculpatory evidence.

228.    The Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to plaintiff's clearly established constitutional right to be free from deprivation of liberty without due process of law.

229.    Plaintiff is innocent of the said robbery and all underlying charges. The prosecution finally terminated in Plaintiff's favor on March 23, 2023, when the indictment was dismissed by Court order, signed by The U.S. District Court Judge, Hon. George B. Daniels.

230.    By virtue of the foregoing, Defendants are liable for having substantially caused the foregoing violations of Plaintiff's consitutional rights and his resultant injuries.

## COUNT IV
### Denial of a Fair Trial
### New York State Constitutional Violations

### *Plaintiff vs. All Defendants*

231.    Plaintiff hereby incorporates all other paragraphs as if fully set forth herein at length.

232.    Plaintiff seeks relief for the violation of his rights secured under the laws and Constitution of the State of New York, regarding his due process rights to a fair trial, and under the New York State Constitution Article I § 6 to due process of law, by the defendants fabrication of evidence, and deliberate failure to conduct a constitutionally adequate investigation.

233.    Defendants, acting individually and in concert, deprived Plaintiff  of his clearly

established constitutional right under the New York State Constitution, to due process of law and a fair trial.

234.    Defendants were aware, or should have been aware of the falsity of the information used to prosecute plaintiff, which caused a deprivation of plaintiff's liberty through an unfair trial, because they created the false identification through the deliberately suggestive identification procedures and by facilitating witnesse collaboration.

235.    Defendants fabricated inculpatory evidence and intentionally used unduly suggestive identification procedures and/or direct suggestion and/or coercion to obtain witness identifications, including but not limited to, fabricating the false identifications of plaintiff as the perpetrator of the crime, by using an unduley suggestive Facebook photograph of plaintiff yielding a weapon; the identifications of plaintiff were fabricated and the result of suggestion and coercion by the defendants; and the defendants failed to conduct a constiutionally adequate investigation in light of evidence pointing to other perpetrators and away from plaintiff.

236.    Defendants, intentionally using the fabricated evidence deprived plaitniff of his right to a fair trial, by intentionally using impermissible suggestions and coercion to obtain witness identifications and to suppress exculpatory evidence.

237.    The Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to plaintiff's clearly established constitutional right to be free from deprivation of liberty without due process of law.

238.    Plaintiff is innocent of the said robbery and all underlying charges. The prosecution finally terminated in Plaintiff's favor on March 23, 2023, when the indictment was dismissed by Court order, signed by The U.S. District Court Judge, Hon. George B. Daniels.

239.    By virtue of the foregoing, Defendants are liable for having substantially caused the foregoing violations of Plaintiff's consitutional rights and his resultant injuries.

**Count V**
**Pursuant to 42 U.S.C. § 1983, *Monell Claim***
**Unconstitutional Policy, Custom, or Pattern and**
**Practice of Promoting, Facilitating, or**
**Condoning Improper, Illegal and**
**Unconstitutional Investigative Techniques and**
**Failure to Supervise, Discipline, and Train**

*Against Defendant City of New York for the Actions and Omissions of the Police Officer Defendants and the NYPD*

240.     Plaintiff hereby incorporates all other paragraphs as if fully set forth herein at length.

241.     Defendant members of the City of New York and New York Police Department, including Detective DeLoren, violated plaintiff's constitutional rights by coercing false testimony and fabricating false evidence to cause plaintiff  to be falsely arrested, maliciously procecuted, deprived of a fair trial, and wrongfully convicted.

242.     On or about January 27, 2014 defendant members of the City of New York and New York Police Department, including Detective DeLoren, coerced witnesses into giving false testimony that plaintiff was the person who committed said robbery and related charges.

243.     On or about April, 2015, defendant members of the City of New York and New York Police Department, including Detective DeLoren coerced witnesses into giving false testimony at plaintiff's criminal trial that plaintiff was the person who committed said robbery, causing plaintiff to be falsely convicted.

244.     The foregoing violations of plaintiff's constitutional rights and his resultant injuries were directly, foreseeably, proximatley, and substantially caused by conduct chargeable to Defendant City of New York, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff,  subject to arrest by the NYPD, namely:

       a.     The NYPD's institution and implementa tion of plainly inadequate or

           unlawful policies, procedures, regulations, practices, and customs concerning:

Case 1:23-cv-03147-JHR   Document 1   Filed 04/14/23   Page 33 of 40

Nolan v. City of New York, et al.                                    Plaintiff's Verified Complaint

    i.   The duty not to initiate an arrest and prosecution that is not based on probable cause;

    ii.   The duty not to coerce, create, or otherwise use false, misleading or unreliable evidence, testimony, statements, or arguments during criminal proceedings;

    iii.   The obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements, and argument whenever such misconduct is discovered to have occurred.

    iv.   The continuing obligation to timely and fully disclose material favorable to the defense as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States,* 450 U.S. 150 (1972), and their progeny; and

  b.  The NYPD's deliberate indifference to the need (of which it has failed) to adequately instruct train, supervise, and discipline its employees with respect to such matters.

245.    The aforesaid deliberate or de facto policies, procedures, regulations, practices and customs, including the failure to properly instruct, train, supervise, and discipline employees with regard thereto, were implemented or tolerated by policymaking officials for Defendant City, including the NYPD and its delegates, who knew:

  a.   To a moral certainty that such policies, procedures, regulations, practices and customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

  b.  That such issues present police employees with difficult choices of the sort that instruction, training, supervision, and discipline will make correct choices less difficult and incentivize making correct choices;

  c. That the making of wrong choices by police employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him or her constitutional injury; and

  d. That employees of the NYPD had demonstrated a long history of making wrong choices in such matters.

246. The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph, based upon:

  a. Numerous credible allegations, many of which were substantiated by judicial decisions, that the NYPD had: v. Participated in coercing and/or manufacturing of false testimony or evidence;

   i. Presented false and/or misleading evidence to prosecutors and/or at hearings and at trial, and failed to correct such false and/or misleading evidence;

   ii. Failed to disclose information favorable to a defendant that was required to be disclosed by the Constitutions and the laws of the United States and of the State of New York;

   iii. The inherent obviousness of the need to train, supervise, and discipline members of the NYPD in their aforementioned constitutional obligations to counteract the inherent pressure on police officers to make arrests and obtain convictions.

247. Evidence of the NYPD's deliberate indifference to police misconduct violative of a criminal suspects' and defendants' constitutional rights, including the coercion of false or misleading statements, fabrication of evidence, and withholding information favorable to the defense was evidenced by The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen

Commission"), dated July 7, 1994, states:

In the face of this problem of corruption, the Department allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate than devastating consequences of corruption itself. As a result, its corruption controls minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputation tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resourced anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus, there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what this Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training, and recruitment.

For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.

*Mollen Commission Report,* p. 2-3.

248.    The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system.

"…Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors. Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them,

…What breeds this tolerance is deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world. Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justified, even if unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get a suspected criminal off the streets. This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, 'What's wrong with that? They're guilty.'"

*Mollen Commission Report,* p. 36, 40-41.

249.    The NYPD's policy, custom and practice of approval and/or ratification of, toleration and/or acquiescence in, or deliberate indifference to violations of its constitutional obligations foreseeably encouraged such violations to continue and was a substantial cause of the violations of plaintiff's constitutional rights beginning with his false arrest and the initiation of a criminal prosecution against him without probable cause and continuing throughout his criminal proceedings and trial.

250.    The aforesaid policies, procedures, regulations, practices, and customs of Defendant City were collectively and individually a substantial factor in bringing about the aforesaid violations of plaintiff's rights under the Constitution and Laws of the United States and in causing his damages.

251.    Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (or his authorized delegates) has final managerial responsibility for training, instructing, supervising, and disciplining police personnel regarding their conduct enforcing the laws of the State of New York, including but not limited to, their obligations not to elicit or manufacture false or unreliable "evidence," to make timely disclosure of exculpatory evidence to the defense, to refrain from offering false or misleading evidence, testimony mad argument during pretrial and trial proceedings, and to correct such false or misleading evidence, testimony, and argument when they become aware of it.

252.    The City's Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to the NYPD's performance of its duties.

253.    The City's Police Commissioner, personally and/or through his authorized delegates, at all relevant times, had final authority and constituted a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

254.    During all times material to this Complaint, the City, through its policymakers, owed a duty to the public at large and to plaintiff, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs, and practices sufficient to prevent, deter, and avoid conduct by their subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

255.    The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the individual Police Defendants of plaintiff's rights under the Constitution and laws of the United States.

256.    By virtue of the foregoing, Defendant City is liable for having substantially caused the foregoing violations of plaintiff's constitutional rights and his resultant injuries.

## Count VI
### *Respondeat Superior Claim*

### *Against Defendant City of New York*

257.    Plaintiff hereby incorporates all other paragraphs as if fully set forth herein at length.

258.    At all times relevant to this Complaint, Defendant Police Officers, including Defendant DeLoren, acted as agents of the City of New York, in furtherance of the business, inclyuding law enforcement functions, of the City, and within the scope of their employment or agency with the City of New York.

259.    The Conduct by which the Police Defendants committed the torts in violation of the New York State Constitutional claims, were not undertaken for the Defendants' personal motives, but rather was undertaken while the Defendants were on duty, carrying out their routine

investigative functions as detectives, investigators, and police officers.

260.    Under the doctrine of *respondeat superior*, the City of New York is liable for their agents' state law torts.

## Damages & Prayer for Relief

261.    Defendants caused numerous damages and injuries to Mr. Nolan.

262.    Mr. Nolan sustained economic injury.

263.    Mr. Nolan sustained emotional injury.

264.    Mr. Nolan sustained severe mental anguish.

265.    Mr. Nolan sustained physical injuries and received negligent medical care while incarcerated.

266.    Mr. Nolan did not have access to the type of medical treatment that he would have had he had been a free civilian.

267.    Mr. Nolan suffered loss of freedom and liberty.

268.    Mr. Nolan continued to suffer a loss of freedom and liberty even after his release from incarceration.

269.    Mr. Nolan suffered loss of companionship and services of his family.

270.    Mr. Nolan is entitled to damages for past emotional anguish and suffering.

271.    Mr. Nolan is entitled to damages for future emotional anguish and suffering.

272.    Mr. Nolan suffered lost earnings and lost opportunities to develop earnings potential

273.    Mr. Nolan suffered bodily injury, pain, and suffering.

274.    Mr. Nolan is entitled to compensation for the physical injuries and harm he sustained sustained and harm as a direct and proximate result of the defendants acts and omissions.

WHEREFORE, Plaintiff Ralph Nolan prays as follows:

First.    For judgment against each of the Defendants, jointly and severally, on each count and cause of action, in an amount which exceeds the jurisdictional limits of all lower courts which might otherwise have jurisdiction;

Second.    That the Court award compensatory damages to him and against Defendants, jointly and severally on each and every claim herein, in an amount to be determined at trial;

Third.    That the Court award punitive damages to him and against all individual Defendants, in an amount to be determined at trial, that will deter such conduct by Defendants in the future;

Fourth.    For a trial by jury;

Fifth.    For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorney's fees; and

Sixth.    For any and all other relief to which he may be entitled.

Dated: New York, New York
       April 14, 2023

By:    _____          _____
       Martin W. Edelman, Esq. (ME 6271)    Paul F. Callan, Esq. (PC 2005)
       Edelman & Edelman, P.C.              Of Counsel to Edelman & Edelman, P.C.
       *Attorneys for Ralph Nolan*          *Attorneys for Ralph Nolan*
       61 Broadway, Suite 2220              61 Broadway, Suite 2220
       New York, New York 10006             New York, New York 10006
       Tel: (212) 943-1200                  Tel: (212) 943-1200

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Ralph Nolan,

Plaintiff,

-against-

The City of New York, Detective Ellis DeLoren, John Doe Detectives #1-15 individually and in their official capacity as Members of the New York City Police Department;

Defendants.

Docket No. **23-cv-3147**

## Complaint

Edelman & Edelman, P.C.
61 Broadway, Suite 2220
New York, New York 10006
Tel: (212) 943-1200

*Attorneys for Plaintiff,*
*Ralph Nolan*