```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RALPH NOLAN                                    :
                    Plaintiff,                 :   OPINION AND ORDER
         -v.-                                  :
                                                   23 Civ. 3147 (JHR) (GWG)
CITY OF NEW YORK et al.,                       :
                    Defendants.                :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Ralph Nolan has brought suit against defendants the City of New York (the "City"), Detective Ellis Deloren and various John Doe police officer defendants under 42 U.S.C. § 1983 and state law, including a claim of municipal liability against the City under Monell v. Dept. Of Social Services, 436 U.S. 685 (1978). See Complaint, filed Apr. 14, 2024 (Docket # 1) ("Compl.").[1] Defendants City and Deloren filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[2] In response, plaintiff filed the instant motion for a hearing pursuant to Dunton v. County of Suffolk, State of New York, 729 F.2d 903, 909 (2d Cir. 1984), on the ground that Deloren should be provided with separate counsel at the City's expense because existing counsel must be disqualified from representing Deloren for having a conflict of interest.[3] The Court

---

[1] While the complaint and plaintiff's papers render the individual defendant's name as "DeLoren," the defendants' filings spell the name "Deloren" and thus we use that rendering.

[2] See Notice of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed May 24, 2024 (Docket # 23) ("Def. Mot."); Memorandum of Law, filed May 24, 2024 (Docket # 24) ("Def. Mem.").

[3] See Notice of Motion for Hearing, filed July 26, 2024 (Docket # 29) ("Mot."); Memorandum of Law, filed July 26, 2024 (Docket # 29-7) ("Mem."); Memorandum of Law in Opposition, filed August 9, 2024 (Docket # 33) ("Opp."); Reply Memorandum of Law in Support, filed August 17, 2024 (Docket # 34) ("Reply").

deemed the motion to dismiss withdrawn to allow consideration of the instant motion. See Order, filed August 2, 2024 (Docket # 32). For the following reasons, plaintiff's motion for a hearing pursuant to Dunton is denied at this time.

I. BACKGROUND

The central claim in plaintiff's complaint is that he was improperly convicted of federal robbery charges because witness identifications were "conducted under suggestive procedures by NYPD Detective Deloren, who was well aware that he was acting in violation of Mr. Nolan's rights." Compl. at ¶ 11; see id. at ¶¶ 5, 12. The complaint points to a number of improper actions taken by Deloren, including allowing a witness to view a photograph from Nolan's Facebook page that showed Nolan holding a gun, suggesting to a witness that Nolan was the perpetrator, and allowing witnesses to talk among themselves about their identification. Id. at ¶¶ 77, 79, 80. Nolan's conviction was eventually reversed by the United States Court of Appeals for the Second Circuit, after which the United States attorney's office dismissed the case against Nolan. Id. at ¶¶ 14, 16-17. In the meantime, Nolan served approximately six years in prison. Id. at ¶ 4.

The complaint makes claims for malicious prosecution against all defendants under 42 U.S.C. § 1983, which allows suit for federal constitutional violations, and under state law, id. at ¶¶ 112-201 (Count I), ¶¶202-220 (Count II); for denial of a fair trial against all defendants under 42 U.S.C. § 1983 and under state law, id. at ¶¶ 221-230 (Count III), ¶¶231-239 (Count IV); under 42 U.S.C § 1983 against the City of New York (that is, the Monell claim), id. at ¶¶240-256 (Count V); and against the City of New York under the doctrine of "respondeat superior," id. at ¶¶257-260 (Count VI).

With regard to the Monell claim, the complaint alleges that the "unlawful, documented actions of Defendants', as well as their employees and agents resulted from affirmative or de facto . . . municipal policies, practices, and customs which violate the constitutional rights of criminal suspects and Defendant, or from deliberate indifference by policymaking officials, acting on behalf of the City of New York, to such violations." Id. at ¶ 28. The complaint alleges that "it was a matter of practice and policy within the NYPD to promote this type of unlawful and unconstitutional behavior, praising and promoting such individuals, and thereby encouraging future constitutional violations to occur, including those directed against Mr. Nolan." Id. at ¶ 29. The complaint cites to the "Mollen Commission" report, which found "evidence of the NYPD's deliberate indifference to police misconduct violative of . . . criminal suspects' and defendants' constitutional rights . . . ." Id. at ¶ 247.

In their memorandum of law seeking to dismiss the complaint, defendants argued that (1) plaintiff's "allegations of suggestive identification procedures do not state a claim because a suggestive identification does not violate Due Process unless and until it is offered into evidence against the accused"; (2) plaintiff's "claim for malicious prosecution fails because of the presumption of probable cause established by a grand jury indictment, and the eyewitness victim identifications which created probable cause"; (3) "defendant Deloren is entitled to qualified immunity from the claims against him"; (4) plaintiff's "claim for municipal liability fails because the Complaint's allegations --- relying on an investigative report from 1994 --- are wholly insufficient to allow a plausible inference of a policy of the City"; and (5) plaintiff's claims "under state law fail for the same reasons as plaintiff's federal claims, and also because they are untimely under the statute of limitations applicable to claims against the City and its employees,

3

and plaintiff failed to meet the statutory prerequisites for such claims under New York law." Mem. at 10.

In support of the Monell defense, defendants' fourth contention, defendants argue that plaintiff's claim must be dismissed because the complaint "relies entirely on the Mollen Commission Report," which is "too old and not factually connected to the allegations." Id. at 16. In support of the qualified immunity defense, defendants argue that Officer Deloren is entitled to qualified immunity because "there was no authority from the Second Circuit or the Supreme Court holding that . . . Deloren violated plaintiff's constitutional rights by the conduct alleged here." Id. at 15.

Plaintiff's motion for a hearing pursuant to Dunton essentially seeks the disqualification of the City's counsel from representing Deloren on the ground that "[o]nce [d]efendants moved to dismiss [p]laintiff's Monell claim, they created an imminent if not actual and irreconcilable, conflict of interest." Mem. at 4; accord id. at 7 ("Defendants' motion to dismiss the Monell claims created a non-waivable conflict of interest."). The basis for plaintiff's position is that "[u]pon dismissal of [the Monell] claims, the City will be free to argue that the Detective acted outside the scope of his employment and entirely avoid liability on all claims." Id.; accord id. at 4 ("the dismissal of the Monell claim will eliminate the City's liability for the Detective's actions and leave the Detective without any assurance from the City that it will indemnify him should a verdict be rendered against him").

II. DISCUSSION

As will be explained further below, plaintiff's motion turns on the question of whether the defendants' attorney, the City's Corporation Counsel, suffers from a conflict of interest based on her representation of both the City and Deloren, with the result that the defendants' counsel

4

must be disqualified from representing Deloren, and that Deloren must be provided different counsel at the City's expense.

With respect to the issue of disqualification, "[t]he authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. of City of N.Y. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). As the Second Circuit has explained:

> [D]isqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation.

Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764-65 (2d Cir. 1990) (quoting Nyquist, 590 F.2d at 1246). In reviewing disqualification motions, courts "often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules," however, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc., 409 F.3d at 132.

While "courts within the Second Circuit have noted that parties have standing to seek disqualification of counsel for the opposite party on conflict-of-interest grounds," Billewicz v. Town of Fair Haven, Vermont, 2022 WL 4115966, at *2 (D. Vt. Aug. 11, 2022) (collecting cases), aff'd, 2023 WL 3961437 (2d Cir. June 13, 2023), "courts must guard against the tactical use of motions to disqualify counsel, [which are therefore] subject to fairly strict scrutiny. . . ," Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009).

5

In <u>Dunton</u>, the Second Circuit recognized that after <u>Monell</u>, "the interests of a municipality and its employees as defendants in a section 1983 action are in conflict." <u>Dunton</u>, 729 F.2d at 907. <u>Dunton</u> explained:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.

<u>Id.</u>[4] The conflict in <u>Dunton</u> surfaced for the first time at trial, when the defendants' attorney argued that the municipality should not be held liable because the individual defendant was acting outside the scope of his employment. <u>Id.</u> at 907.

Case law developed since <u>Dunton</u> reflects that in the context of a municipality and an employee being represented by the same counsel, disqualification is far from automatic. <u>See, e.g.</u>, <u>Billewicz</u>, 2022 WL 4115966, at *3. Rather, it is appropriate "only where counsel acts in a way that is <u>actually</u> against the officer's interests." <u>Lieberman v. City of Rochester</u>, 681 F. Supp. 2d 418, 425 (W.D.N.Y. 2010) (emphasis in original). Additionally, there must be a showing of "actual prejudice" to the employee. <u>Id.</u>; <u>accord</u> <u>Leather v. Ten Eyck</u>, 2 Fed.Appx. 145, 148 (2d Cir. 2001) (noting that it is a "necessary element of [a] conflict of interest claim" that "an actual conflict of interest adversely affected [the] lawyer's performance") (citation and internal quotation marks omitted).

---

[4] The defendants take the position that <u>Dunton</u> wrongly references "good faith" in relation to the immunity defense, <u>see</u> Opp. at 2-4 — a position that plaintiff argues at length is incorrect, <u>see</u> Reply at 3-8. The Court sees no need to address this issue now because even if we accept plaintiff's position on this question, the circumstances here do not warrant a hearing pursuant to <u>Dunton</u>.

6

Here, plaintiff accepts that where the City binds itself to indemnify an officer or where the City "stipulates" that an officer acted within the scope of their employment, there is no potential for a conflict.  See Mem. at 7.  In the absence of either of these two conditions, however, plaintiff's position is that there is necessarily a conflict warranting separate counsel if the municipality merely moves to dismiss a Monell claim, as is the case here.  See, e.g., Mem. at 4.  As plaintiff puts it, "[o]nce [d]efendants moved to dismiss [p]laintiff's Monell claim, they created an imminent if not actual and irreconcilable, conflict of interest because the dismissal of the Monell claim will eliminate the City's liability for the Detective's actions and leave the Detective without any assurance from the City that it will indemnify him should a verdict be rendered against him."  Mem. at 4.  In a similar vein, plaintiff also argues that the "mere filing of the motion" to dismiss the Monell claims creates the problem, Mem. at 6, because "[u]pon dismissal of [the Monell claims], the City will be free to argue that the Detective acted outside the scope of his employment and entirely avoid liability on all claims," Mem. at 7.

The practical sweep of plaintiff's argument is breathtaking inasmuch as it would mandate disqualification in almost every case that comes before this Court where both the City and individual employees are named as defendants.  After all, the City almost always moves to dismiss any Monell claim without a binding itself regarding indemnification or scope of employment.  Additionally, it is unclear why plaintiff limits his assertion to situations where a motion to dismiss has been filed.  While plaintiff pays lip service to the principle that "Dunton does not impose a per se disqualification rule whenever a Monell claim is interposed as the mere interposition of the claim does not create a conflict," Mem. at 9, the logic of plaintiff's argument necessarily suggests a conflict at the moment a case is filed against a municipality and its employee.  This is because it is a virtual certainty that the municipality will eventually seek to

7

dismiss the Monell claim, even if it waits until trial to do so. Thus, the conflict as plaintiff perceives it is present at the moment any case with a Monell claim is filed.

Apart from the fact that plaintiff's argument that disqualification is mandated would radically alter the representation scheme currently practiced, Dunton and its progeny do not support such a result. Case law makes clear that there is no "per se rule requiring disqualification whenever a municipality and its employees are jointly represented in a Section 1983 case." Billewicz, 2022 WL 4115966, at *3. Rather, a case-by-case determination is required" to determine whether "any concurrent conflict of interest" exists. Id.; accord id. ("There is no dispute that defense counsel represents all defendants in all capacities. But that alone does not establish any concurrent conflict of interest between the Town and Chief Humphries.").

Importantly, case law is clear that "the mere possibility of conflict . . . is not enough to trigger disqualification of joint counsel in a Section 1983 action involving municipalities and their employees." Manfredi v. Town of Greenburgh, 2009 WL 10739943, at *2 (S.D.N.Y. Apr. 3, 2009). Instead, there must be a "strong possibility of conflict," id. at *3, or as Dunton itself put it, an "imminent threat of a serious conflict." 729 F.2d at 907.

Plaintiff premises the alleged conflict on the fact that "the dismissal of the Monell claim will eliminate the City's liability for the Detective's actions and leave the Detective without any assurance from the City that it will indemnify him should a verdict be rendered against him." Mem. at 4. Accepting plaintiff's reasoning would mean that the mere availability of different defenses to the City and Deloren creates a conflict that requires court intervention. But while the City and Deloren have differing bases for obtaining dismissal (a lack of Monell liability for the City and qualified immunity for Deloren), there is no indication at this time that there is any

8

reason for the two parties to present different factual narratives in order to obtain dismissal. Instead, the parties are limited to the allegations of the complaint for purposes of their motion to dismiss. In other words, merely moving to dismiss the Monell claim does not create a conflict of interest because raising infirmities in the Monell allegations of the complaint does not make it any more likely that plaintiff will be able to prove that Deloren committed constitutional violations..

While a dismissal of the City without a dismissal of Deloren will mean that Deloren will be left as the sole defendant in this case, the City's counsel has no reason not to provide a vigorous defense to Deloren because the City has already taken steps that may ultimately lead to Deloren receiving indemnification. We know this because in order for the City to have afforded representation to Deloren, the governing statute required it to determine that Deloren acted "within the scope of his public employment" and was "not in violation of any agency rule or regulation," N.Y. Gen. Mun. Law § 50-k(2). These circumstances require indemnification, except in the case of "intentional wrongdoing or recklessness on the part of the employee." See N.Y. Gen. Mun. Law § 50-k(3). While the City states that it believes that the City's counsel could change her determination that Deloren acted within the scope of his employment if evidence unknown to her now came to light, Opp. at 5 n.1, there is no reason at this time to believe that such a change of position is imminent or even likely. Similarly, at this stage of the case, the mere fact that wrongdoing has been alleged in the complaint does not cause us to believe that it is likely that there will ultimately be a refusal to indemnify.

Plaintiff also asserts that if the City is dismissed, it will be "free to argue that the Detective acted outside the scope of his employment and entirely avoid liability on all claims." Mem. at 7. But if the City is no longer a party to this case, the defense would have no reason to

9

argue that Deloren acted outside the scope of his employment since any such argument would not be relevant to or constitute a defense to the claims against Deloren. In fact, the Second Circuit has ruled explicitly that the concern raised by Dunton does not exist when the municipality does not face a Monell claim. Restivo v. Hessemann, 846 F.2d 547, 581 (2d Cir. 2017) ("Unlike in Dunton, in this case the County was not a party at trial facing a Monell claim, and thus would not benefit from the argument that Volpe was acting outside the scope of his employment.").

Even if arguments raised by municipal and individual defendants may in some instances raise a conflict of interest, the defendants' motion here raises no such conflict. Most importantly, defendants do not argue that Deloren acted outside of his scope of employment. Instead, the defendants' theory — that the complaint shows no unconstitutional policy or practice of the City and that the plaintiff's rights, whether or not clearly established, were not violated, see Def. Mot. at 7-20 — is "a unified theory of defense benefitting" both Deloren and the City," Restivo, 846 F.2d at 58. When such a 'unified theory of defense' exists, there is no Dunton issue. See id. Additionally, this situation is akin to the situation addressed by the Second Circuit in Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006), a post-Dunton case where "defense counsel advanced and argued all possible defenses available to officers, including the qualified immunity defense." Id. at 115. Patterson found that the potential conflict of interest inherent in a Section 1983 suit had not "materialized." Id. (citing Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993)).[5]

---

[5] Plaintiff asserts that the qualified immunity argument in the defendants' brief in support of the motion to dismiss is "halfhearted" because it does not include an argument that the "officer was following NYPD policies and procedures in good faith." Reply at 8. On a motion to dismiss, however, a defendant is limited to the allegations of the complaint and thus cannot make, as plaintiff seems to propose, "factual argument[s]." Id.

10

As noted, case law requires a "strong possibility of conflict," Manfredi, 2009 WL 10739943, at *2, or an "imminent threat of a serious conflict," Dunton, 729 F.2d at 907, before disqualification is triggered. Here, there is no strong possibility of conflict, let alone an imminent threat, because the facts alleged in the complaint do not "undoubtedly" motivate the City to want to "challenge whether [Deloren was] acting within [his] scope of employment." Manfredi, 2009 WL 10739943, at *3. At this stage of the case, all that can be discerned is that the City is likely to argue, as they already have in their motion to dismiss, see Def. Mot. at 7-20, that the allegations of the complaint do not show any constitutional violation under Monell, that there is no unconstitutional City policy, and that Deloren is entitled to qualified immunity.

Plaintiff's moving brief points to two cases in which plaintiff contends a Court has mandated disqualification: Manfredi and Bernstein v. Vil. of Piermont, 2013 WL 5718450 (S.D.N.Y. Oct. 21, 2013). Neither supports the result sought by plaintiff, however. In Manfredi, the district court found that there was a "strong possibility of conflict" given the charges of egregious police violence because the municipality would "undoubtedly" seek to challenge whether the police officers were acting within the scope of their employment and that there was a "strong possibility" that the municipality's attorney will "soon" be in an ethically problematic situation. 2009 WL 10739943, at *3. Manfredi also pointed to the fact that there had been an internal review that would have to be reopened that would place the police officers and the municipality in an "adversarial position." Id. These facts are far afield from the situation here. The other case cited, Bernstein, is even further removed from the situation here as it involved individual defendants who made an application to the Court to appoint separate counsel because they had conflicting factual contentions. 2013 WL 5718450, at *3. There is no reason to believe at this stage that the City and Deloren have differing views as to the facts of what occurred.

11

Finally, plaintiff suggests that we should ensure that Deloren has been advised of any potential conflicts in this case. Mem. at 1, 10. We recognize that "[w]here a conflict is serious and disqualification might be warranted, the district court is under a duty to ensure that the client fully appreciates his situation." Dunton, 729 F.2d at 908. However, we do not conclude that any "serious" conflict has been shown at this point and thus we will not at this time require that proof be given as to what counsel has advised Deloren.[6]

Conclusion

For the foregoing reasons, plaintiff's motion for a "Dunton hearing" (Docket # 29) is denied. The Court recognizes that "a court is under a continuing obligation to supervise members of its Bar." Dunton, 729 F.2d at 909 (citations omitted). Thus, the denial of the motion is without prejudice to any future motion where circumstances have changed.

Dated: October 25, 2024
    New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[6] In his reply brief, plaintiff asserts that the City must "either agree to indemnify the Detective or refuse," Reply at 15, and makes various arguments as to why such an indemnification decision must be made now, see Reply at 14-17. We do not address this issue because any request that the City be required to make such a determination formed no part of plaintiff's moving brief or notice of motion. See Playboy Enterprises, Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court."), aff'd, 159 F.3d 1347 (2d Cir. 1998). In any event, case law has held that the governing statutes allow the Corporation Counsel to make such a determination after trial. See Hogan v. City of New York, 2008 WL 189891, at *3-*6 (E.D.N.Y. Jan. 18, 2008).